OPINION
{¶ 1} Defendant-appellant, Tara Wood, appeals the decision of the Clermont County Municipal Court denying her motion to suppress evidence obtained from two field sobriety tests in an OVI case. We affirm the decision of the trial court. *Page 2 
 {¶ 2} On the evening of June 6, 2007, appellant was driving westbound on State Route 32 when she was involved in a single car accident. According to appellant, the accident occurred when she struck an object in the road, which ultimately caused her to roll her vehicle onto its side and into the median.[1]
 {¶ 3} Shortly thereafter, Christopher Wilson, a police officer with the Union Township Police Department, was dispatched to the scene. Upon his arrival, Officer Wilson located appellant to determine if she was injured and needed medical attention. While speaking to her, Officer Wilson detected a moderate smell of alcohol and noticed that she had bloodshot and glassy eyes. The smell of alcohol became stronger once appellant spit out her gum. Appellant denied having had anything to drink that evening. At that point, Officer Wilson conducted three standardized field sobriety tests; the horizontal gaze nystagmus test (HGN), the walk-and-turn test, and the one-legged stand test. At the conclusion of the field sobriety tests, appellant was arrested and transported to the Union Township Police Department. She later refused to submit to a breathalyzer test, but admitted to consuming alcohol.[2]
 {¶ 4} Appellant was charged with driving under the influence of alcohol (OVI) under R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, and failure to control under R.C. 4511.202, a minor misdemeanor. Appellant filed a motion to suppress challenging the admissibility of the three field sobriety tests. The trial court overruled the motion to suppress. Appellant then filed a Motion in Limine, which the trial court also denied. At trial, the jury returned a verdict of guilty on both charges. Appellant appeals the trial *Page 3 
court's decision overruling the motion to suppress, advancing one assignment of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED WHEN ADMITTING THE TWO STANDARDIZED FIELD SOBRIETY TESTS ADMINISTERED TO APPELLANT FOR TRIAL PURPOSES DUE TO THE FACT THAT THE STATE FAILED TO SHOW THAT THESE TESTS WERE ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS."
 {¶ 7} Appellant argues that the HGN test and the walk-and-turn test were not conducted in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) standards, and therefore, should have been suppressed.[3] Specifically, appellant argues that the evidence presented by the state was "not even close to demonstrating by clear and convincing evidence" that the field sobriety tests were administered in substantial compliance with the 2004 NHTSA standards. This argument lacks merit.
 {¶ 8} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 329, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility.State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate *Page 4 
court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 9} In response to a motion to suppress regarding field sobriety tests, the state must show the requisite level of compliance with accepted testing standards. State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, ¶ 9. The typical standards, as were used in this case, are those from the NHTSA. State v. Jimenez, Warren App. No. CA2006-01-005, 2007-Ohio-1658, ¶ 12. Strict compliance with the NHTSA standards is not necessary, but instead, clear and *Page 5 
convincing evidence of substantial compliance with the NHTSA standards is sufficient. R.C. 4511.19(D)(4)(b); see, also, Schmitt at ¶ 9.
 {¶ 10} In filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." See Crim. R. 47. This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v. Shindler,70 Ohio St.3d 54, 1994-Ohio-452, paragraph one of the syllabus. After the defendant meets her burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards. State v. Plunkett, Warren App. No. CA2007-01-012,2008-Ohio-1014, ¶ 11, citing City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 220. However, a defendant may not unjustly cite the state's inability to respond to specific claims for which the state did not have sufficient notice as the basis for granting a motion to suppress.Plunkett at ¶ 21.
 {¶ 11} The extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." State v.Nicholson, Warren App. No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, if the defendant's motion to suppress raises issues in general terms, then the state is only required to show substantial compliance in general terms. Nicholson at ¶ 10; Plunkett at ¶ 12, citingJimenez, Warren App. No. CA2006-01-005, 2007-Ohio-1658. The state's burden to show compliance in regards to a general allegation is slight, and requires only the amount of specificity as stated in the motion. *Page 6 Nicholson at ¶ 11. Therefore, the state need only "present general testimony that there was compliance" when the motion is not sufficiently specific. Id. However, if the defendant's motion to suppress lacks the required particularity, the defendant may still provide some factual basis, either during cross-examination or by conducting formal discovery, to support a claim that the standards were not followed in an effort to "raise the `slight burden'" placed on the state.Plunkett at ¶ 25-26, citing State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 12.
 {¶ 12} This court found a motion to suppress insufficient to raise the state's burden of proof in State v. Plunkett, 2008-Ohio-1014. InPlunkett, we determined that appellant's motion was insufficient because it contained boilerplate language that merely listed every fathomable defect in the collection of evidence in an OVI case. Plunkett at ¶ 15. Further, the motion was overly broad when it listed the evidence sought to be suppressed, followed by eight vague grounds upon which the motion was based. Id. Even though the motion in Plunkett was insufficient to raise the state's burden, it did provide sufficient notice of a general challenge to the admissibility of the test. See Plunkett at ¶ 18 (finding appellant's motion to suppress was sufficient to give the prosecutor and court notice of a general challenge to the BAC test).
 {¶ 13} In this case, appellant's motion to suppress contained an issue as to whether the officer gave proper instructions on the HGN and walk-and-turn tests. However, just as in Plunkett, appellant's motion to suppress does not provide any factual bases with sufficient particularity to place the prosecutor and the court on notice of such claims.[4] Here, appellant's *Page 7 
motion lists the evidence appellant seeks to have suppressed, including field sobriety tests and observations of the police officer, and is followed by five vague grounds upon which the motion to suppress is based. These vague grounds include a claim that the NHTSA instructions were not read to appellant verbatim, a recitation of the instructions, and concludes by a providing a general claim that "the officer did not strictly comply" with the testing procedures. Appellant's motion to suppress is nearly identical to the motion to suppress that was found insufficient in Plunkett, and therefore, appellant's motion is insufficient to raise the burden of proof of the state.
 {¶ 14} Further, appellant did not raise the state's burden of proof during cross-examination. Here, appellant failed to ask specific questions during her cross-examination to support the claim that the NHTSA standards were not followed. Instead, appellant's cross-examination merely consisted of general questions regarding the officer's procedures used during the HGN and walk-and-turn test.[5]
Using the words "exact procedure" and "specific instructions" in the questions does not change the general nature of the questions. Therefore, appellant's motion to suppress *Page 8 
encompassed only general claims, and appellant's cross-examination, only posed general questions to support her claim that the NHTSA standards were not followed. Accordingly, the state needed only to address appellant's claims generally to prove the field sobriety tests were conducted in substantial compliance with the NHTSA standards.
 {¶ 15} First, appellant argues that the state failed to show that the HGN test was conducted in substantial compliance with the NHTSA standards because the officer failed to give appellant the NHTSA instructions verbatim and failed to use the correct procedure when administering the HGN test. We disagree.
 {¶ 16} According to the NHTSA manual, a police officer should instruct the suspect that they are going to check the suspect's eyes, that the suspect should keep their head still and follow the stimulus with their eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer then checks the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees.
 {¶ 17} On direct examination, and as an initial matter, Officer Wilson testified that he was trained in the detection and apprehension of OVI drivers, that he investigated other cases where alcohol impairment was involved, and that he has made approximately 45 OVI arrests in his career.
 {¶ 18} Further, Officer Wilson testified that he was trained to perform the HGN test, and that he complied with his NHTSA training when he conducted the HGN test on *Page 9 
appellant. He also testified that he instructed appellant to place her heels and toes together with her hands down by her side, and to keep her head still as she followed the tip of the stimulus, which, in this case, was his pen. After giving these initial instructions, he placed the stimulus approximately 12 to 15 inches away from appellant's face, and determined that her pupils were equal in size and tracking equally. He then checked each eye twice for nystagmus at maximum deviation, lack of smooth pursuit, and onset of nystagmus prior to 45 degrees. Officer Wilson did not testify how fast he moved the stimulus prior to observing the onset of nystagmus. The trial court found that the state met its burden by showing Officer Wilson substantially complied with the NHTSA standards even though there was no testimony as to the timing components requirements. We find no error in the trial court's conclusion.
 {¶ 19} Second, with respect to the walk-and-turn test, appellant argues that the state failed to show that the test was conducted in substantial compliance with the NHTSA standards because, based on the evidence presented, the officer "omitted 47% of the required instructions." This argument lacks merit.
 {¶ 20} The NHTSA manual contains specific instructions officers are taught to provide the suspect with prior to the walk-and-turn test. However, an officer is not required to give the instructions verbatim. See Nicholson at ¶ 23 (stating that the officer substantially complied with the NHTSA guidelines even though he did not recite the instructions for either the walk-and-turn or the one-leg stand test verbatim).
 {¶ 21} The walk-and-turn test requires the officer to first instruct the suspect of the initial positioning, which requires the suspect to stand with her arms down at her side, and to place one foot directly in front of the other in a line. The suspect is then told *Page 10 
to remain in that position while further instructions are given. These further instructions include, the method by which the suspect walks while touching her heel to her toe for every step, counting the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line. The officer is also told to demonstrate the instructions to ensure that the suspect fully understands.
 {¶ 22} Officer Wilson testified that he instructed appellant to place her left foot on the line, to place her right foot touching the heel to toe in front of her left foot, and to put her arms down by her side until he was finished giving the remaining instructions. He then testified that he gave the following instructions:
 {¶ 23} "You take nine steps forward down this line in the prescribed manner and I need you to turn back around and come nine steps down this line. I need you to count each step out loud and make sure you touch heel to toe, don't stop the test for any reason once you've started."
 {¶ 24} Officer Wilson then testified that he demonstrated this portion of the test by taking three steps forward. The instructions continued:
 {¶ 25} "[I] advised her to continue to nine, and once she got to her nine steps, she would leave her left foot planted on the line, take a series of small steps to turn around and come back down the line another nine steps."
 {¶ 26} Officer Wilson testified that he then demonstrated this portion of the test. The instructions continued when he reiterated the following instructions:
 {¶ 27} "I told her I needed her to keep her hands down at her side, count each step out loud, make sure she touches heel to toe, don't stop the test for any reason."
 {¶ 28} When the officer completed the instructions, appellant stated that she *Page 11 
understood and was asked to begin.
 {¶ 29} As appellant aptly notes, the specific instructions provided for the walk-and-turn test require the officer to speak 161 words and the testimony provided by Officer Wilson contained only 47 percent of the quoted words from the NHTSA manual.[6] Despite the absence of a portion of the quoted language in the NHTSA manual, the trial court determined that the instructions provided were more than sufficient to apprise appellant of the manner in which she was to perform the test. As a result, the trial court found that the officer substantially complied with the NHTSA standards. We find no error in this conclusion.
 {¶ 30} Because the state provided sufficient evidence to prove that there was substantial compliance with the NHTSA standards, appellant's assignment of error is overruled.
 {¶ 31} Judgment affirmed.
WALSH, P.J. and YOUNG, J., concur.
[1] The subsequent investigation failed to produce any object(s) on or around State Route 32. Further, appellant's tires were not punctured, but instead, only suffered damage as a result of the vehicle rolling onto its side.
[2] Appellant admitted to consuming one glass of wine while Officer Wilson completed her paperwork.
[3] Appellant does not appeal the admissibility of the one-leg stand test. The officer abandoned the one-leg stand test after appellant began hopping on one-leg towards on-coming traffic. NHTSA standards suggest terminating the test if the suspect cannot safely complete the test.
[4] {¶ a} The motion in Plunkett contained similar language to the motion filed in case. The precise wording of the disputed motion inPlunkett is as follows: "Now comes the Defendant, through Counsel, and moves the Court to suppress evidence obtained from the warrantless seizure of the Defendant, including, but not limited to: 1. Tests of Defendant's coordination and/or sobriety and or/alcohol and/or drug level, including but not limited to bodily substance tests of Defendant's breath, blood or urine to determine the concentration of alcohol and/or drugs in Defendant's body. 2. Statements taken from or made by Defendant. 3. Observations and opinions of the police officers who stopped and/or arrested and/or conducted tests upon Defendant, regarding Defendant's sobriety and/or alcohol and/or drug level."
{¶ b} Specifically, appellant's motion in this case states: "Now comes the Defendant, through undersigned counsel, moves the Court to suppress evidence obtained from the warrantless seizure of the Defendant including but not limited to: 1. Opinion and/or observations of the police officers regarding Defendant's sobriety and/or alcohol level including, but not limited to those opinions or observations resulting from the administration of standardized field sobriety tests; 2. Statements taken from Defendant or caused to be taken from Defendant; 3. Defendant's alleged refusal to submit to alcohol and/or drug analysis."
[5] Appellant's cross-examination included questions such as: "Would you explain the exact procedures you used when you administered the test to Ms. Ward [sic] that evening?"; "[W]hat was the procedure with regard to moving the stimulus when you checked for each of these various segments of the nystagmus test?"; "[W]hat were the specific instructions that you gave to Ms. Wood that evening with regard to the walk and turn?."
[6] Of the 161 words in the NHTSA instruction, 46 of the words are: "a," "and," "are," "as," "at," "by," "do," of," "on," "so," "the," "this," "to," and "with." *Page 1