OPINION
{¶ 1} Defendant-appellant, Glenn Wyatt, appeals the decision of the Clermont County Municipal Court denying his motion to suppress evidence obtained from a breathalyzer test. We affirm the decision of the trial court.
 {¶ 2} On July 8, 2007, Trooper Rose of the Ohio State Highway Patrol arrested appellant for driving while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d). Thereafter, Trooper Rose transported appellant to the *Page 2 
Goshen Township Police Department where he submitted to a breath test conducted by Officer Tim Budai.
 {¶ 3} On September 26, 2007, appellant filed a motion to suppress challenging the state's compliance with the administrative regulations promulgated by the Ohio Department of Health (ODH) for the calibration of the breathalyzer machine, which, in this case, was an Intoxilyzer 5000. The trial court overruled the motion to suppress. Appellant then entered a plea of no contest and was found guilty.
 {¶ 4} Appellant appeals the trial court's decision overruling the motion to suppress, raising one assignment of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT PREJUDICIALLY ERRED IN OVERRULING WYATT'S MOTION TO SUPPRESS."
 {¶ 7} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 329, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 8} In filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." Crim. R. 47. This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be *Page 3 
decided." State v. Wood, Clermont App. No. CA2007-12-115,2008-Ohio-5422, ¶ 10, quoting State v. Shindler, 70 Ohio St.3d 54,1994-Ohio-452, paragraph one of the syllabus. After the defendant meets his burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards. State v. Plunkett, Warren App. No. CA2007-01-012,2008-Ohio-1014, ¶ 11, citing City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 220. However, a defendant may not unjustly cite the state's inability to respond to specific claims for which the state did not have sufficient notice as the basis for granting a motion to suppress.Wood at ¶ 10, citing Plunkett at ¶ 21.
 {¶ 9} Pursuant to R.C. 4511.19(D), analysis of bodily substances must be conducted in accordance with methods approved by the Ohio Director of Health and prescribed in the Ohio Administrative Code. Absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required because such compliance is not always humanly or realistically possible. State v. Morton (May 10, 1999), Warren App. No. CA98-10-131, at 2, citing State v. Plummer (1986), 22 Ohio St.3d 292,294. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol test results can be admitted in a prosecution under R.C. 4511.19. Id. In determining whether the state substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. Id., citing State v. Williams (1992),82 Ohio App.3d 39.
 {¶ 10} The extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." State v.Nicholson, Warren App. No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, if the defendant's motion to suppress raises issues in general terms, then the state is only required to show substantial compliance in general terms. Nicholson at ¶ 10; Plunkett at ¶ 12, *Page 4 
citing State v. Jimenez, Warren App. No. CA2006-01-005, 2007-Ohio-1658. The state's burden to show compliance in regards to a general allegation is slight, and requires only the amount of specificity as stated in the motion. Nicholson at ¶ 11. Therefore, the state need only "present general testimony that there was compliance" when the motion is not sufficiently specific. Id. However, if the defendant's motion to suppress lacks the required particularity, the defendant may still provide some factual basis, either during cross-examination or by conducting formal discovery, to support a claim that the standards were not followed in an effort to "raise the `slight burden'" placed on the state. Plunkett at ¶ 25-26, citing State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 12.
 {¶ 11} This court found a motion to suppress insufficient to raise the state's burden of proof in State v. Plunkett, 2008-Ohio-1014. InPlunkett, we determined that the appellant's motion was insufficient because it contained boilerplate language that merely listed every fathomable defect in the collection of evidence in an OVI case, followed by eight vague grounds upon which the motion was based.Plunkett at ¶ 15. Further, the memorandum of law in support of the motion, which contained only one factual paragraph specific to the case, was also insufficient to put the state on notice because it consisted of entirely boilerplate language. Id. at ¶ 16. However, even though the motion in Plunkett was insufficient to raise the state's burden, it did provide sufficient notice of a general challenge to the admissibility of the test. Plunkett at ¶ 18; see, also, State v. Wood, 2008-Ohio-5422
(finding appellant's motion to suppress was sufficient to give the prosecutor and court notice of a general challenge to the standard field sobriety tests).
 {¶ 12} In this case, just as in Plunkett and Wood, appellant's motion to suppress does not provide any factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be raised regarding the admissibility of the breathalyzer testing evidence. Here, appellant's motion lists the evidence appellant seeks to have suppressed, *Page 5 
and is followed by six vague grounds relating to the disputed calibration of the breathalyzer machine. Although appellant claims the stated grounds form part of "a factual claim," they fail to provide anything more than the same vague language we considered insufficient inPlunkett and l/l/oocf.[1] In addition, appellant's memorandum of law is nearly entirely comprised of boilerplate language that does nothing more than relay the applicable legal concepts. In fact, just as inPlunkett, appellant's memorandum of law contains only one paragraph evidencing the specific facts of the case. The paragraph states:
 {¶ 13} "On July 8, 2007 at 8:25 a.m., the motor vehicle that Wyatt was operating was not properly operating due to mechanical problems. Trooper Rose of the Ohio State Highway Patrol came upon Wyatt at Shiloh Road. Tpr. Rose was oncoming to the vehicle that Wyatt was operating and believed him to be asleep. Tpr. Rose turned his cruiser around and stopped behind the Wyatt vehicle. Upon approaching the Wyatt vehicle and speaking to Wyatt, Tpr. Rose noticed an odor of alcohol emanating from Wyatt. Wyatt submitted to standard field sobriety testing and was arrested for OVI. Wyatt was taken to Goshen Township and submitted breath for sampling."
 {¶ 14} Clearly, this statement does not raise any "factual bases with sufficient particularity" to properly place the prosecutor and the court on notice of the issues to be decided in regards to his motion to suppress the breathalyzer test results.
 {¶ 15} Further, although the necessary factual basis can be obtained during cross-examination at the hearing on the motion, appellant failed to do so in this case. Plunkett at ¶ 26, citing Embry at ¶ 27-28. Here, during his cross-examination, appellant asked only whether the records provided by the state were accurate copies of the records kept in the *Page 6 
breathalyzer's record book. Such minimal questioning on cross-examination contains no assertion of factual bases to support his claim that certain aspects of the ODH regulations were not followed.
 {¶ 16} Appellant claims that he corresponded with the state prior to the November 21, 2007 hearing in which he "specifically advised the State of Ohio of the issues with regard to the breath test that would be the subject of the suppression hearing." Appellant further claims that the "trial court was given a copy of the correspondence at the suppression hearing." However, our review of the record fails to discover a letter, motion, or any other correspondence that appellant now claims he provided to the prosecutor and to the court prior to the hearing. As a result, because the record is devoid of any alleged correspondence between the two parties, we are unable to determine any issues for which the state was put on notice.[2] Accordingly, we find that the state needed only to generally address appellant's claims to prove that the breathalyzer test was conducted in substantial compliance with the ODH regulations.
 {¶ 17} Appellant argues that the calibration of the breathalyzer machine was not conducted in substantial compliance with the administrative regulations promulgated by the ODH, and therefore, should have been suppressed. Appellant raises four issues with respect to the court's decision to deny his motion to suppress the breathalyzer test results. Specifically, appellant argues that the trial court erred in denying the motion to suppress *Page 7 
because the state failed to show substantial compliance with the ODH regulations when the evidence indicated: (1) an operation manual was not "present in the room where the breath testing device is located;" (2) the calibration solution was not refrigerated after first use "because there was no thermometer in the refrigerator on the date that [appellant's] counsel visited the Goshen Township Police Department;" (3) the instrument checks were not completed in accordance with the checklist of the instrument being used; and (4) the "[e]xhibits admitted at the suppression hearing do not indicate that an RFI check was completed using a radio normally used by the Goshen Township Police Department." These arguments lack merit.
 {¶ 18} First, appellant argues that the state failed to show that breathalyzer test was conducted in substantial compliance with the ODH regulations because "an operations manual was not in the same room as the device." We disagree.
 {¶ 19} It is undisputed that the operational manual was not stored in the same room as the breathalyzer machine. However, contrary to appellant's claim, the operational manual is not required to be stored in the same room as the breathalyzer machine, but instead, "shall be on file in the area where the breath tests are performed." See Ohio Adm. Code 3701-53-01(B). Further, "while the regulation provides the manual must be kept in the `area' where the tests are performed, it does not require an exact proximity." See State v. Stout (May 15, 2008), Licking App. No. 07-CA-51, 2008-Ohio-2397, ¶ 112 (finding substantial compliance with the ODH requirements when the manual was not kept in the testing room, but "in the office with the rest of [the] books").
 {¶ 20} In this case, the evidence indicates that the operational manual is kept along with other materials and supplies relating to the breathalyzer machine in an adjoining room, no more than 25 feet away from where the machine is stored, and where the tests are performed. Based on the evidence presented, the trial court determined that storing the *Page 8 
operational manual in an adjoining room constitutes substantial compliance with the ODH regulations because the manual, if needed, "would have been readily accessible." We find no error in the trial court's conclusion.
 {¶ 21} Further, a conviction shall not be reversed on the basis of the admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby. See, e.g., State v. Curry (Sept. 5, 1989), Butler App. No. CA89-02-032, at 4 (finding defendant failed to demonstrate any prejudice as a result of the manufacturer's manual being absent from the testing room). As the trial court noted, appellant failed to allege or demonstrate any prejudice as a result of the operational manual being located in an adjoining room from where the tests are performed. We find no error in this determination.
 {¶ 22} Second, appellant argues that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-04(C) as it pertains to refrigeration of the calibration solution because "there is simply no evidence * * * that the refrigerator at the Goshen Township Police Department even works, * * * [or] that the refrigerator kept calibration solutions refrigerated after first use." This argument lacks merit.
 {¶ 23} Pursuant to Ohio Adm. Code 3701-53-04(C), "[a]fter first use, instrument check solutions shall be kept under refrigeration when not being used." In this case, Officer Budai, who conducted the breathalyzer test, testified that the calibration solution was kept in the refrigerator, but that the refrigerator did not contain a thermometer on September 27, 2007, the date appellant's counsel visited the Goshen Township Police Department. From this, appellant claims that "[n]ot a scintilla of evidence was offered that the refrigerator kept calibration solutions refrigerated after first use."
 {¶ 24} As an initial matter, we fail to see the importance of whether the refrigerator contained a thermometer on September 27, 2007, the day that appellant's counsel visited the *Page 9 
Goshen Township Police Department, as it relates to appellant's breathalyzer test conducted on July 8, 2007.[3] Further, even if the refrigerator did contain a thermometer, Ohio Adm. Code 3701-53-04(C) does not require the refrigerator to be set to a specific temperature. See generally State v. Brown (June 15, 1998), Madison App. No. CA97-06-030 (rejecting a request to impose a temperature requirement for the refrigeration of calibration solution because such an action would be usurping the ODH's role in creating the regulations). As a result, regardless of whether the refrigerator contained a thermometer on July 8, 2007, the trial court determined that the evidence indicates that the solution was stored in the refrigerator when not in use, and further, that there was no evidence to suggest that the refrigerator was not working properly. We find no error in the trial court's conclusion.
 {¶ 25} Third, appellant apparently argues that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-04(A) since the calibration checklists contain a discrepancy in regard to the date the calibration solution was first used.[4] This argument lacks merit. *Page 10 
 {¶ 26} The purpose of writing down the batch and bottle information is to ensure that the calibration solution is not in use for more than three months. State v. Knoll (Aug. 8, 1998), Medina App. No. 2771-M,1998 WL 469902 at * 3.
 {¶ 27} In this case, the evidence indicates that the bottle was first used on either June 26, 2007 or July 4, 2007, and that Corporal Ron Robinson, the senior operator in charge of conducting the weekly calibration on the breathalyzer machine, made a clerical error in filing out the checklist with the proper date. The trial court found that, regardless of whether the bottle was first used on June 26, 2007 or July 4, 2007, the bottle was in use for less than a month at the time of the calibrations. As a result, the trial court determined that the state demonstrated substantial compliance with the ODH regulations. We find no error in this conclusion.
 {¶ 28} Fourth, appellant also apparently argues that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-04(A) because the senior operator did not check one box on the calibration checklist used on July 11, 2007. We disagree.
 {¶ 29} Appellant relies on State v. Kauffman (1995),106 Ohio App.3d 831, to support his claim that the state failed to show substantial compliance with the ODH regulations. In Kauffman, this court determined that "checking only one of four boxes on the BAC Datamaster calibration checklist and failing to record a target value" was not substantial compliance. Id. at 834. Although we agree that the cumulative deficiencies in Kauffman constituted less than substantial compliance warranting suppression of the test results, we find the facts inKauffman distinguishable from the case at bar.
 {¶ 30} In this case, nearly all of the required information on the calibration checklist was completed. The only omission on the form was the senior operator's failure to check a single box. In fact, other courts have distinguished Kauffman by finding that substantial compliance occurs where nearly all of the information on the calibration check list is completed, or where *Page 11 
there was actual evidence that the senior operator followed all requisite steps. See State v. Willis (1999), 131 Ohio App.3d 646, 653
(finding substantial compliance where only omission on checklist was handwritten indication of the test result); see, also, State v.Wojcicki (Sept. 28, 2001), Franklin App. No. 01AP-152, 2001 WL 1143156
at *2 (finding "substantial compliance when there is other reliable evidence indicating that all the proper steps were taken in testing the machine"). Here, the trial court determined that the state showed substantial compliance with the ODH regulations because the senior operator testified that each step of the calibration procedure was followed even though he failed to check a single box on the checklist.[5] We find no error in this conclusion.
 {¶ 31} Finally, appellant argues that the state failed to provide evidence that the radio frequency interface (RFI) check was completed using a radio normally used by the Goshen Township Police Department. This argument lacks merit.
 {¶ 32} Pursuant to Ohio Adm. Code 3701-53-04(A)(1), the breathalyzer machine "shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency."
 {¶ 33} In this case, the only testimony relating to the senior operator's RFI check was elicited from the state. This testimony included:
 {¶ 34} "Q: Okay and what is that you're required to do to test the calibration of the Intoxilyzer 5000?"
 {¶ 35} "A: You have to check the RFI detector, basically you have a radio and check the actual breath tube, front clicker mic to make sure the RFI is working. We also hook a simulator up to the machine we get from the health department, as well as alcohol and we run the test on the machine to make sure it's in proper working order." *Page 12 
 {¶ 36} Further, the senior operator also testified that he complied with his training, which included using the Goshen Township Police Department radio for the RFI check, when he performed the calibration check on both July 4, 2007 and July 11, 2007.
 {¶ 37} Appellant did not provide any testimony on direct examination, elicit any testimony from the senior operator on cross-examination, or make a final oral argument challenging the RFI procedures during the motion to suppress hearing. The trial court found that the state showed substantial compliance with the ODH regulations by providing general testimony in regards to the RFI check. We find no error in this conclusion.
 {¶ 38} Because the state provided sufficient evidence to prove there was substantial compliance with the ODH regulations, appellant's assignment of error is overruled.
 {¶ 39} Judgment affirmed.
BRESSLER, P.J., and YOUNG, J., concur.
[1] Appellant, in his memorandum in support of his motion to suppress states, "[defendant herein is stating as a factual basis that at the time of the test, while in the custody of the State, no effort was made by the State to show that the testing method complies with State regulations." Using the words "as a factual basis" does not change the vague nature of the allegation.
[2] {¶ a} The only indication that any correspondence exists is evidenced by the following exchange noted in the transcript between appellant's counsel and the court:
{¶ b} "THE COURT: Is there a particular aspect of the testing that you are attempting to * * *
{¶ c} "MR. ROSENHOFFER: Actually I can do this the easy way and I can hand this to you and you can review it. Ms. Nichols already has a copy and Goshen Township got a copy after I went out there that day."
{¶ d} [The court then asked both parties if they were ready to proceed. Both answered in the affirmative.]
{¶ e} "MR. ROSENHOFFER: [speaking to the court] * * *. May I borrow that paper back because I have certain documents — I think I have documents attached to it?"
{¶ f} No such document is found in the record.
[3] {¶ a} In fact, this issue was brought to the attention of appellant during his direct examination of Officer Budai. During the hearing on the motion to suppress, the following exchange occurred:
{¶ b} "Q: During the course of our meeting [on September 27, 2007] one of the things that occurred is I asked if I could inspect the refrigerator where the calibration solution is used after its first use, did I not?
{¶ c} "A: You did.
{¶ d} "Q: And upon inspection, and in fact you independently inspected, there is no thermometer in that refrigerator is there?
{¶ e} "A: There was not one at that time, you're correct.
{¶ f} "Q: And there was no way to ascertain what the temperature was in that particular cooling device or apparatus of the time of [appellant's] test on July 8 was there?
{¶ g} "A: I can't say whether there was a thermometer in there at the time of [appellant's] arrest. I can only tell you what there was not one there when you came.
{¶ h} "Q: And had you ever seen one in that refrigerator?
{¶ i} "A: Previously. I can't tell you when the last date since I haven't actually * * * calibrated the machine in a while myself."
[4] {¶ a} Appellant's entire argument, to which the state did not even respond, states:
{¶ b} "The two defects with the calibration before and after [appellant's] test are significant. Clearly, the R.C. 4511.19 (as cited above) requires that the calibrator adhere to the rule of the OAC. This Court has held the State of Ohio's feet to the fire in the past. State v. Kauffman (1995), 106 Ohio App.3d 831."
[5] As the senior operator testified, "[i]t's obvious I made an error and didn't check that box" because he could not have received a calibration figure, in this case a .105, without completing all of the calibration requirements listed. *Page 1