OPINION *Page 2 
{¶ 1} Appellant, Robert Cox, appeals a judgment of the Coshocton Municipal Court convicting him of Operating a Motor Vehicle While Intoxicated (OMVI) in violation of R.C. 4511.19(A)(1)(a), upon a plea of no contest. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} At approximately 3:30 a.m. on November 18, 2007, Deputy Chip Udishas of the Coshocton County Sheriffs Department observed a vehicle with only one working headlight traveling on Fourth and Walnut in Coshocton. The deputy followed the vehicle for about a block and a half and observed it travel left of center. The deputy then activated his overhead lights and stopped the car which was driven by appellant.
 {¶ 3} When appellant rolled down the window, Deputy Udishas noticed an odor of alcohol. Appellant's face was red, his eyes were bloodshot, and his speech was slurred. When the deputy asked appellant if he had anything to drink, appellant replied, "a couple." Tr. 9.
 {¶ 4} The deputy asked appellant to exit the vehicle for the administration of field sobriety tests. The deputy administered the one-leg stand test. Appellant could not maintain his balance and put his foot down several times. Appellant finally said, "All I'm going to say is no." Tr. 13. The deputy next administered the walk-and-turn test. Appellant initially failed to comply with the directions, taking only three steps instead of nine steps as the deputy requested. When appellant started the test again, he had difficulty on some steps touching his heel to his toe. The deputy also administered the horizontal gaze nystagmus (HGN) test. Appellant exhibited clues of intoxication on this *Page 3 
test as well. During the field sobriety tests, appellant told the officer that he had a Commercial Driver's License (CDL) which he could not afford to lose.
 {¶ 5} Following administration of the field sobriety tests, the deputy arrested appellant for OMVI and placed him in the cruiser to transport him to the police station. He did not give appellant Miranda warnings at this time. On the way to the station, appellant began talking again about his fear of losing his CDL and told the deputy he wasn't going to lie, he had had four beers. Tr. 20.
 {¶ 6} At the station, appellant was read his Miranda warnings and asked how much beer he consumed. He stated that he had only one beer at noon the previous day. When reminded that earlier he had told the deputy he had had four beers, appellant stopped the interview.
 {¶ 7} Appellant was charged with OMVI and driving left of center (R.C. 4511.25(A)). Appellant filed a motion in the Coshocton Municipal Court to suppress all statements he had given on the basis that he was not properly Mirandized. He moved to suppress the results of the field sobriety tests on the basis that the deputy did not substantially comply with the National Highway Traffic Safety Administration (NHTSA) manual. Appellant also claimed that the deputy lacked probable cause to arrest him for OMVI.
 {¶ 8} Following a suppression hearing, the court overruled the motion in its entirety. Appellant entered a plea of no contest to OMVI, and the left of center charge was dismissed by appellee. Appellant stipulated to a finding of guilt on the plea and was sentenced to 90 days incarceration with 84 days suspended. He was fined $650 with $325.00 suspended. His license was suspended for 180 days, he was placed on *Page 4 
unsupervised probation, and he was ordered to complete an alcohol rehabilitation program.
 {¶ 9} Appellant assigns the following errors on appeal:
 {¶ 10} "I. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS APPELLANT'S STATEMENTS PRIOR TO BEING ADVISED OF HIS RIGHTS.
 {¶ 11} "II. THE COURT ERRED IN DENYING THE MOTION TO SUPRESS APPELLANT'S STATEMENTS AFTER BEING ADVISED OF HIS RIGHTS.
 {¶ 12} "III. THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE OF THE APPELLANT'S PERFORMANCE IN SOBRIETY TESTS.
 {¶ 13} "IV. THE COURT ERRED IN DENYING THE MOTION TO SUPRESS EVIDENCE COLLECTED AS A RESULT OF AN ARREST WITHOUT PROBABLE CAUSE."
 {¶ 14} Each of appellant's assignments of error challenges the trial court's ruling on his motion to suppress. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141;State v. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), *Page 5 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysiner, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.E2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 I {¶ 15} Appellant argues that the court erred in overruling his motion to suppress statements he made during the traffic stop and in the cruiser on the way to the police station because he was not read his rights as required by Miranda v. Arizona (1966), 384 U.S. 436.
 {¶ 16} In Miranda, the United States Supreme Court held that when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning, he must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him. Id. at 478-479. Unless such warnings are demonstrated by the prosecution at trial, no evidence obtained as a result of the *Page 6 
interrogation can be used against the defendant. Id. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.
 {¶ 17} In Berkemer v. McCarty (1984), 468 U.S. 420, the U.S. Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop did not constitute "custodial interrogation" for purposes of the Miranda rule, so that pre-arrest statements the motorist made in answer to such questioning were admissible against the motorist. If that person "thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440.
 {¶ 18} The Supreme Court compared the usual traffic stop to a"Terry stop," rather than to a formal arrest. Id. A Terry stop is not an arrest requiring probable cause; rather it is an investigative seizure made with a reasonable suspicion of criminal activity. Terry v.Ohio (1968), 392 U.S. 1. The Court found the traffic stop exception toMiranda to be constitutionally valid because a traffic stop is temporary, brief, public and substantially less police-dominated than the type of interrogation at issue in Miranda itself. Id. at 437-439. The Court stated that although a traffic stop curtails freedom of movement by the detainee and imposes some pressure to answer questions, the pressure does not sufficiently impair the privilege against self-incrimination to warrant a Miranda warning. Id. at 436-437. Thus, the Court determined that an officer making a traffic stop can "ask the detainee a moderate number of questions to determine his *Page 7 
identity and to try to obtain information confirming or dispelling the officer's suspicions." Id. at 439.
 {¶ 19} In the instant case, the deputy noted an odor of alcohol about appellant when he rolled down the window and observed that appellant's face was red. When the deputy spoke to appellant, he noted that appellant's speech was slurred. The deputy at that point asked appellant if he had anything to drink. The deputy was not required to give appellant Miranda warnings prior to this question pursuant to the Supreme Court's decision in Berkemer, as the question was part of a routine traffic stop and the question was asked to obtain information confirming or dispelling his suspicions that appellant had been drinking. Appellant's statement, in response to the deputy's question, that he had had "a couple" of drinks, was admissible withoutMiranda warnings because the question was not asked while appellant was in custody within the meaning of Miranda.
 {¶ 20} Appellant next argues that the court should have suppressed the statements he made during the field sobriety tests and in the cruiser. He argues that the officer repeatedly questioned him before hisMiranda warnings were given at the station.
 {¶ 21} While appellant testified at the suppression hearing that he was questioned continuously about whether he had been drinking, the deputy testified that appellant volunteered the statements about his fear of losing his CDL and his statement that he had four beers. Tr. 20. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the Supreme Court'sMiranda decision. Miranda, supra, at 478. *Page 8 
 {¶ 22} Based on the deputy's testimony, the trial court did not err in finding that appellant's statements during the field sobriety tests and in the cruiser were not the result of interrogation but were volunteered, and Miranda was not implicated. Tr. 113.
 {¶ 23} The first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, appellant argues that the statements appellant made to the deputy at the jail, after he had been properly Mirandized, were a continuation of the pre-Miranda
interrogation and, therefore, inadmissible as part of a single, unwarned line of questioning prohibited by Missouri v. Seibert (2004),542 U.S. 600.
 {¶ 25} In Seibert, the defendant was taken from her son's hospital room at 3 a.m. and brought to the police station for questioning concerning a fire that had occurred in her mobile home. She was questioned for 30-40 minutes without Miranda warnings and made incriminating statements. She was then given a 15-20 minute break. After the break, the officer turned on the tape recorder, read her theMiranda warnings and asked questions about her prior confession. The officer who obtained the confession testified at the suppression hearing that he used an interrogation technique he had been taught: question first, warn later and repeat the questions until he gets the answer he had obtained prior to warning the suspect. The Supreme Court found both statements were inadmissible because they were parts of a single, unwarned sequence of questioning. Id. at 612. The object of question-first is to render Miranda warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed. Id. at 611. *Page 9 
 {¶ 26} The evidence at the suppression hearing does not support appellant's claim that this is a question-first case. As discussed in assignment of error one, the statement appellant made in the cruiser, that he had had four beers, was volunteered and not the result of an interrogation. Unlike the defendant in Seibert, he was not required to be given Miranda warnings to render his first statement admissible, and therefore when he was subsequently Mirandized, the questioning was not a part of a single, unwarned sequence of questioning.
 {¶ 27} Further, the Court's concern in Seibert was that having confessed before being given Miranda warnings, a suspect does not realistically have the opportunity to make an informed choice about whether to remain silent. Id. In the instant case, it is clear from the evidence that the Miranda warnings given at the station did give appellant an opportunity to make an informed choice because when he was questioned about his earlier statement that he had had four beers, appellant stopped the interview.
 {¶ 28} The second assignment of error is overruled.
 III {¶ 29} In his third assignment of error, appellant argues that the court erred in overruling his motion to suppress the field sobriety tests because the state failed to prove they were conducted in substantial compliance with the NHTSA standards.
 {¶ 30} R.C. 4511.19(D)(4)(b) provides:
 {¶ 31} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration *Page 10 
of alcohol, a controlled substance, or a metabolite of a controlled substance in the whole blood, blood serum or plasma, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 32} "The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 33} "The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 34} "If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 35} As to the one-leg stand test, appellant argues that the officer testified that his instructions were not as quoted in the manual. The officer admitted on cross-examination that, in giving the instructions, he did not quote the manual verbatim. However, Deputy Udishas testified that he first told appellant that he needed to stand with his feet together and his arms down to his sides and to not do anything else until the deputy told him to start. Tr. 10. Deputy Udishas gave appellant a demonstration of *Page 11 
how to do the test, and he explained to appellant that appellant should raise whatever foot he chose 6 to 8 inches off the ground, point his toe, look at his toe, and count, "1,001, 1,002, 1,003" until told to stop. Id. These instructions are the same instructions provided in the NHTSA manual at page 12. The officer need not read the instructions verbatim from the manual to substantially comply. State v. Wood, Clermont App. No. CA2007-12-115, 2008-Ohio-5422, ¶ 20. The deputy's testimony demonstrates that he substantially complied with the manual in his instructions for the one-leg test. The court did not err in overruling the motion to suppress the one-leg test.
 {¶ 36} Appellant argues that, as to the walk-and-turn test, the deputy did not quote the instructions from the manual. As stated earlier in our discussion of the one-leg stand test, substantial compliance does not require that the deputy read the instructions verbatim from the manual. Id. The deputy testified that he told appellant to get into the starting position and remain there during the instructions for the test. Tr. 12. The deputy told appellant to place his right foot directly in front of his left foot and keep his arms at his sides. He advised appellant that he would need to take nine heel to toe steps in a straight line without using his arms for balance. Tr. 28. He asked appellant if he understood. Id. The officer demonstrated by taking three steps, but explained to appellant that he would need to take nine steps, and advised appellant to count his steps out loud. Tr. 13. These instructions substantially comply with the instructions as stated in the NHTSA manual at page nine.
 {¶ 37} The deputy admitted that he did not tell appellant not to stop until the test was complete, as required by the manual. However, the deputy substantially complied with the instructions as set forth in the manual despite this omission. Further, when *Page 12 
appellant stopped after three steps, the deputy allowed him to start over, and the deputy again explained to appellant that he needed to take nine steps.
 {¶ 38} Appellant also argues that the test did not substantially comply with the manual because there was not a visible straight line on the roadway. Contrary to appellant's assertions, the manual does not require the presence of a visible line. In the preface, the manual recognizes that ideal conditions for administering tests may not always exist in the field, and slight variations from the ideal may affect the evidentiary weight to be given to the tests but do not necessarily affect their admissibility. Further, the specific instructions for the walk-and-turn test on page 9 of the manual provide that the officer should tell the suspect to place his or her foot on the line, "real or imaginary." The officer testified that he could not use a visible line without putting appellant in the path of traffic. Tr. 12. The court did not err in overruling the motion to suppress the walk-and-turn test.
 {¶ 39} Finally, appellant argues that the court erred in failing to suppress the HGN test. Appellant first argues that the deputy did not ask questions preliminary to the test, which might lead the officer to conduct a different test. Specifically, appellant argues that the deputy did not ask appellant if he suffered from any pathological brain disorders or if he wore contact lenses. Tr. 38-39. The manual does not make any reference to contact lenses and their possible effect on the test. The deputy testified that contact lenses do not affect the test. Tr. 19. While the manual does state at page 4 that nystagmus may be caused by certain pathological disorders including brain tumors, other brain damage or some diseases of the inner ear, the manual does not require the officer to question a suspect regarding these conditions, and specifically *Page 13 
states, "These pathological disorders occur in very few people and in even fewer drivers." The trial court did not err in failing to suppress the HGN test because the officer failed to question appellant about these conditions.
 {¶ 40} Appellant also argues that the evidence reflects that the officer held the stimulus eight to twelve inches from appellant's eyes, as opposed to the twelve to fifteen inches required by the manual.
 {¶ 41} The officer testified that he believed the stimulus was to be held 8-12 inches from the suspect, when in fact the manual requires the stimulus to be held at 12-15 inches. When asked, at 12-15 inches away, where the stimulus would be positioned in relation to the suspect's eyes, the deputy responded that it would be slightly higher than eye level. Tr. 40. When asked if it was in this position in this case, the officer testified that it was. Id.
 {¶ 42} Assuming arguendo that the officer did not substantially comply with the manual concerning the HGN, appellant has not demonstrated prejudice from the court's alleged improper admission of the HGN results. Appellant entered a plea of no contest to a violation of R.C. 4511.19(A)(1)(a):
 {¶ 43} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 44} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 45} In State v. Dalrymple, Fairfield App. No. 07CA33,2008-Ohio-2827, this Court held that the appellant did not demonstrate prejudice as a result of the trial court's alleged improper admission of breath test results because the appellant pleaded no *Page 14 
contest to a violation of R.C. 4511.19(A)(1)(a), and because there was competent, credible evidence apart from the breath test that the appellant was under the influence of alcohol, the trial court did not necessarily rely on the breath test results in convicting the appellant. Id. at ¶ 15.
 {¶ 46} The instant case is similar to Dalrymple. Appellant pleaded no contest to a violation of R.C. 4511.19(A)(1)(a). The transcript of the plea hearing reflects that appellant stipulated to a finding of guilt, and nothing in the record demonstrates that the court relied on the HGN results in finding appellant guilty. There was sufficient competent, credible evidence apart from the HGN test that appellant was under the influence of alcohol to support the court's finding of guilt upon the plea. The deputy observed appellant travel left of center. Appellant smelled like alcohol, his eyes were bloodshot, his speech was slurred, and his face was red. He demonstrated clues of being under the influence of alcohol on the one-leg stand test and the walk-and-turn test. He admitted to drinking four beers. Appellant has not demonstrated prejudice from the court's failure to suppress the results of the HGN test on the basis that the stimulus was not held at the proper distance.
 {¶ 47} The third assignment of error is overruled.
 IV {¶ 48} In his fourth assignment of error, appellant argues that the officer did not have probable cause to arrest him, even if the court properly admitted all the evidence he moved to suppress.
 {¶ 49} "Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious *Page 15 
person in the belief that an individual is guilty of the offense with which he or she is charged." State v. Medcalf (1996),111 Ohio App.3d 142, 147, 675 N.E.2d 1268 (citing Huber v. O'Neill (1981),66 Ohio St.2d 28, 30, 419 N.E.2d 10). In determining whether probable cause exists to arrest a suspect for driving under the influence of alcohol, "the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." Id. (citingBeck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142). In determining whether probable cause exists, a court must look at the totality of the circumstances. Medcalf, supra.
 {¶ 50} While field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. State v.Auld, Delaware App. No. 2006-CAC-120091, 2007-Ohio-3508, citingState v. Homan (2000), 89 Ohio St. 3d 421.
 {¶ 51} Assuming arguendo that the court erred in admitting the results of the HGN test, there was sufficient evidence presented at the suppression hearing to support the court's finding that the officer had probable cause to arrest appellant for OMVI based on the totality of the circumstances. The deputy had first observed appellant driving left of center. When he stopped the vehicle, he detected an odor of alcohol. He noted that appellant's face was red, his eyes were bloodshot and his *Page 16 
speech was slurred. Appellant admitted to having "a couple" drinks. Appellant failed to complete the one-leg stand test, putting his foot down several times. Appellant finally said to the deputy, "All I'm going to say is no." Tr. 13. On the walk-and-turn test, appellant demonstrated an inability to touch his heel to his toe on four of his nine steps, and failed to walk in a straight line because of his failure to match his heel to his toe. The trial court did not err in finding that based on the totality of the circumstances, the officer had probable cause to arrest appellant for OMVI.
 {¶ 52} The fourth assignment of error is overruled.
 {¶ 53} The judgment of the Coshocton Municipal Court is affirmed.
Edwards, J. Farmer, P.J. and Gwin, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Coshocton Municipal Court is affirmed. Costs assessed to appellant. *Page 1