OPINION
{¶ 1} Defendant-appellant, A. Kelleen Nicholson, appeals the decision of the Warren County Court denying her motion to suppress evidence obtained from breath-alcohol and field sobriety tests in a DUI case. We affirm.
 {¶ 2} On June 28, 2003, Officer Quillan Short of the Hamilton Township Police Department observed appellant run a red light at the intersection of State Routes 48 and 22. Officer Short stopped appellant's vehicle. While asking appellant for identification, Officer Short noticed that appellant had bloodshot and glassy eyes and he detected the odor of alcohol. He asked if she had been drinking, and appellant responded that she had one or two drinks. At this point, Officer Short asked appellant to perform field sobriety tests.
 {¶ 3} She agreed to perform the Horizontal Gaze Nystagmus ("HGN"), the one-leg stand, and the walk-and-turn tests. At the conclusion of the tests, Officer Short arrested appellant for driving under the influence of alcohol in violation of R.C.4511.19 and failure to obey a traffic control device in violation of R.C. 4511.12. Appellant was transported to a highway patrol post where she consented to taking a breathalyzer test. State Trooper Robert Waulk administered the test, and appellant registered an alcohol content of .241 grams per 210 liters of breath.
 {¶ 4} On July 1, 2003, appellant moved to suppress evidence of field sobriety tests and the breathalyzer test. After a hearing on July 22, the trial court denied appellant's motion. On September 25, 2003, appellant entered a no contest plea to operating a motor vehicle under the influence of alcohol with a breath test greater than .17, a violation of R.C. 4511.19(A)(6). The failure to obey the traffic control device charge was dismissed. The trial court sentenced appellant to 180 days in jail, suspended her driver's license for one year, and imposed a $1,000 fine. The sentence was stayed pending this appeal.
 {¶ 5} Appellant's single assignment of error argues the trial court erred in denying the motion to suppress. Appellant presents three separate issues for review in which she argues against the admissibility of the alcohol-breath test, the admissibility of the field sobriety tests, and the constitutionality of R.C.4511.19(D)-(4)(b).
 {¶ 6} When ruling on a motion to suppress, the trial court serves as the trier of facts and is the primary judge of the credibility of witnesses and the weight of the evidence. Statev. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 7} Appellant first argues that "[w]here a defendant charged with Operating a Motor Vehicle Under the Influence of Alcohol challenges with sufficient particularity through a motion to suppress the State's compliance with Ohio Department of Health regulations relating breath testing, a trial court errs by not suppressing the breath test results when the State fails to show substantial compliance with said regulations."
 {¶ 8} Appellant contends that the trial court erred in finding that the state met its burden of substantial compliance with Ohio Adm. Code 3701-53-04(A). She challenged the state's "compliance with proper bodily substance testing procedure" by listing nearly a score of alleged violations of Ohio Department of Health regulations that govern breath testing procedures in her motion to suppress.[1] Appellant argues on appeal that the state did not present specific evidence of each of her numerous statutory challenges.
 {¶ 9} A motion to suppress must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. State v.Shindler, 70 Ohio St.3d 54, 1994-Ohio-452. Once a defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. See State v. Plummer (1986),22 Ohio St.3d 292. In driving under the influence cases, if a motion sufficiently raises an issue involving the applicable regulations, the state must then show substantial compliance with the regulation at issue. Plummer at 294.
 {¶ 10} However, the burden to establish substantial compliance only extends to the level with which the defendant takes issue with the legality of the test. State v. Johnson
(2000), 137 Ohio App.3d 847, 852. Therefore, when a defendant's motion only raises issues in general terms, the state is only required to demonstrate compliance in general terms. Id. at 851. Specific evidence is not required unless the defendant raises a specific issue in his motion. Id.
 {¶ 11} As these rules relate to driving under the influence cases, a motion alleging the specific Ohio Administrative Code sections a defendant feels were violated sufficiently raises issues for a court's consideration. Shindler at 57. However, the state's burden to show compliance in regards to such a general allegation is slight, and requires only the amount of specificity as stated in the motion. Johnson at 851-52. Unless a motion raises a specific requirement of a regulation in detail, the state is not required to present specific evidence in that issue, but only need present general testimony that there was compliance with the requirements of the regulation. Id. Once the state has established substantial compliance and created a presumption of admissibility, the burden then shifts to the defendant to rebut the presumption by demonstrating that he was prejudiced by anything less than substantial compliance. Statev. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 24.
 {¶ 12} Appellant's argument, while citing specific provisions of the Ohio Administrative Code, does not contain any specific factual challenges and, therefore, remains a general challenge to whether 1) the machine was functioning properly and 2) the instrument check was done on a weekly basis. See State v.Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324. Accordingly, the burden on the state was minimal, needing only to address appellant's claims generally. We find the state produced sufficient evidence at the hearing that created a reasonable inference the regulations at issue were properly followed.
 {¶ 13} During the motion to suppress hearing, Trooper Robert Waulk testified that the breathalyzer machine was working properly when he administered the breathalyzer test. Trooper Waulk discussed how the machine performed a self-calibration check immediately preceding appellant's breath sample. The machine's display indicated that it was functioning properly. Afterwards, appellant took the test. Trooper Waulk received a valid sample that appellant's blood alcohol level was .241.
 {¶ 14} Trooper Waulk also testified that the machine was calibrated weekly. He testified that an instrument check showed the machine was working properly on June 29, 2003. Trooper Waulk's testimony explained that the weekly calibration checks are performed by a person with a senior operator's permit. Even though the state evidence demonstrated the instrument was functioning properly on the day after appellant was tested, testimony of weekly checks created a reasonable inference that the regulations at issue were followed.
 {¶ 15} Appellant's motion to suppress does not raise specific factual challenges to whether the test was performed in substantial compliance with the specific Ohio Department of Health regulations. The state met its slight burden by showing that the breathalyzer machine was in proper working order and that it was calibrated weekly by a senior operator. Consequently, appellant "must do more than merely assert that it is hypothetically possible some more specific aspect of the regulation was not followed." State v. Embry at ¶ 26. Here, despite the shotgun approach of appellant's motion, appellant elected not to cross-examine Trooper Waulk as to whether the testing was in substantial compliance with department of health regulations. Thus, when the state responded to appellant's general assertions with evidence that created a reasonable inference that the regulations at issue were generally followed, the burden shifted to appellant to rebut the presumption of admissibility by demonstrating that he was prejudiced by anything less than substantial compliance. Appellant failed to do so in this case.
 {¶ 16} Appellant next argues "[w]here a police officer's administration of field sobriety tests is shown during a motion to suppress hearing to have departed substantially from the NHTSA standards, all evidence of those field sobriety tests must be suppressed."
 {¶ 17} At the hearing on appellant's motion to suppress, the state was required to demonstrate by clear and convincing evidence that the field sobriety tests were administered in substantial compliance with standardized testing procedures such as those established by the National Highway Traffic Safety Administration ("NHTSA"). See R.C. 4511.19(D)(4)(b); State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 9.
 {¶ 18} We find that the field sobriety tests were performed in substantial compliance with NHTSA standards. At the hearing, Officer Short testified that he attended three weeks of training at the Sinclair Police Academy in administering the field sobriety tests.
 {¶ 19} Appellant first argues that the HGN test was not done properly because Officer Short failed to 1) give proper instructions,[2] 2) compare appellant's pupil sizes, and 3) examine properly nystagmus at maximum deviation.
 {¶ 20} Officer Short testified that he instructed appellant the HGN was "a test to test her eyes." He also explained that "if at anytime [appellant] thought that she was going to move her head, to place her hands underneath her face to help keep her head from moving." After Officer Short confirmed appellant's understanding of the instructions, he then told her "to follow the tip of [his] pen with her eyes."
 {¶ 21} Immediately following these instructions, the HGN test procedure continues with examining both eyes for equal tracking of the stimulus, then determining whether both pupils are equal in size, and followed by checking for smooth tracking of the stimulus. Both unequal tracking and different pupil sizes could indicate a medical disorder or head injury. Here, Officer Short testified that after giving the instructions, he passed the stimulus in front of appellant's eyes to "check for equal tracking to make sure there was no type of head injury." Seeing that both eyes tracked equally, he then tested for smooth tracking. Officer Short testified that appellant's eyes "would go, they'd jump, they'd stop."
 {¶ 22} Officer Short then checked for distinct nystagmus at maximum deviation. Appellant argues this portion was done improperly because Officer Short only took the stimulus "about to her shoulders," the marker for testing the onset of nystagmus prior to 45 degrees. However, Officer Short testified, in accordance with NHTSA regulations, that he "took [his] pen all the way out as far as her eyes could track, about to her shoulders."[3] He then finished the HGN by checking and finding onset of nystagmus prior to 45 degrees. We find, despite the omission of checking appellant's pupil sizes, that the HGN administered was in substantial compliance with NHTSA standards.
 {¶ 23} Appellant also argues against the admissibility of the results from her one-leg stand and walk-and-turn tests because Officer Short did not give her proper instructions. Even though Officer Short did not recite the instructions for either test verbatim, we find that his instructions and administration of the tests substantially complied with the NHTSA guidelines.
 {¶ 24} The one-leg stand test requires the officer to inform suspect that she must begin the test with her feet together and that she must keep her arms at her side for the entire test. The officer also tells the suspect that she must raise one leg, either leg, six inches from the ground and maintain that position while counting out loud for thirty seconds. THE NHTSA guidelines provide that the counting should be done in the following manner: "one thousand and one, one thousand and two, until told to stop."
 {¶ 25} Officer Short testified that he began the one-leg stand test by telling appellant to keep her hands to her sides and not to start until she was instructed to do so. He then demonstrated the proper procedure for performing the test. He showed appellant how to raise a foot approximately six inches from the ground and how to count from one thousand and one to one thousand and thirty. He testified that she understood the instructions and demonstration. By the time appellant counted one thousand and three, she "fell backwards into the hood of [the police] cruiser." Officer Short stopped the test according to NHTSA regulations which suggest terminating the test if the suspect cannot safely complete it.
 {¶ 26} The final field sobriety test that Officer Short conducted was the walk-and-turn. This test requires the officer to first instruct the suspect of the initial positioning. The officer must have the suspect stand with her arms down and place one foot directly in front of the other on line. The suspect is then informed to remain in the position while further instructions are given. The officer must then describe and demonstrate how to perform the test. The instructions include the method by which the suspect walks while touching her heel to her toe for every step, counts nine steps out loud while walking down the line, and makes a turn with small steps with one foot while keeping the other foot on the line.
 {¶ 27} Officer Short testified that he began the test by placing appellant in proper position, "stand[ing] with her right foot in front of her left on the line." He then instructed appellant to remain in that position with her hands to her side while he proceeded to give a demonstration as well as the further instructions of the test. He advised her of the specific test procedures including how to touch heel-to-toe for every step, to turn using the small-step method, and to count out loud all nine steps. Officer Short also confirmed appellant's understanding of the directions. Appellant was unable to hold the position during the instructions. When she performed the test, she never touched her heel to toe. She walked off the line three times and took twelve steps before performing an improper turn at which point Officer Short terminated the test.
 {¶ 28} We find the state demonstrated by clear and convincing evidence that Officer Short substantially complied with NHTSA guidelines when he administered the three field sobriety tests.
 {¶ 29} Finally, appellant argues that "[t]he `substantial compliance' standard contained in R.C. 4511.19(D)(4)(b) is unconstitutional."
 {¶ 30} In reviewing the constitutionality of a statute, there is a general presumption in favor of the validity of legislation. R.C. 1.47(A); State v. Sinito (1975), 43 Ohio St.2d 98. The party challenging the statute bears the burden of proving the constitutional invalidity beyond a reasonable doubt. State v.Thompkins, 75 Ohio St.3d 558, 560, 1996-Ohio-264.
 {¶ 31} Appellant argues that R.C. 4511.19(D)(4)(b) improperly usurps the Ohio Supreme Court's authority to promulgate rules of evidence in violation of the Ohio Constitution. In State v.Phipps, Auglaize App. No. 2-03-39, 2004-Ohio-4400, the Third District Court of Appeals addressed this identical issue. For the following reasons, we find the Third District's reasoning persuasive and similarly hold that R.C. 4511.19(D)(4)(b) is constitutional. See, also, State v. Faul, Montgomery App. No. 20579, 2004-Ohio-6225.
 {¶ 32} In State v. Homan, the Ohio Supreme Court held that police must administer field sobriety tests in strict compliance with standardized testing procedures in order for the results of the tests to serve as evidence of probable cause to arrest.State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, paragraph one of the syllabus. The court explained that "[w]hen field sobriety testing is conducted in a manner that departs from established procedures, the results are inherently unreliable." Id. at 424. The Homan decision, however, only addressed the common law standard of admissibility of field sobriety test evidence where the Revised Code had not contained any relevant provision. Subsequent to the Homan decision, the Ohio General Assembly enacted Amended Substitute Senate Bill No. 163 ("S.B. 163") in 2002.
 {¶ 33} Amended R.C. 4511.19(D)(4)(b) now provides, in pertinent part:
 {¶ 34} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards of any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 35} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 36} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 37} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 38} The legislature thus determined that evidence of field sobriety tests done in substantial compliance with NHTSA guidelines should be admitted as evidence if otherwise permitted under the Ohio Rules of Evidence.
 {¶ 39} Appellant's constitutional challenge is based on the Modern Courts Amendment to the Ohio Constitution that grants authority to the Ohio Supreme Court to "prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." Section 5(B), Article IV, Ohio Constitution. The Modern Courts Amendment also details the procedure for the making of such rules. The Supreme Court is required to file proposed rules by January 15 of each year and those proposed rules will take effect on July 1 unless the General Assembly adopts a concurrent resolution of disapproval. Id. Afterwards, "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Id. Thus, when the legislature passes a statute that conflicts with a formally proposed and adopted rule of evidence, the separation of powers doctrine will be violated.
 {¶ 40} Like the Third District, we find no specific rule of evidence pertinent to the standard of admissibility required for field sobriety tests. The Homan decision did not cite any specific evidentiary rule in its opinion. Despite appellant's assertion otherwise, we are unwilling to construe the Homan
opinion's silence in this respect as an "obvious" implication of Evid.R. 702.
 {¶ 41} The legislature can create statutes that govern the admissibility of evidence as long the statutes do not conflict with a rule of evidence. The legislature, in fact, has already enacted statutes that do so.[4] Accordingly, we find that S.B. 163 does not violate the separation of powers. Instead, it simply replaces the common law standard of admissibility of field sobriety tests as announced in Homan. The amended R.C. 4511.19
does not conflict with any formally adopted rule of practice or procedure pursuant to Section 5(B), Article IV of the Ohio Constitution. Thus, we find the statute is constitutional.
 {¶ 42} For the aforementioned reasons, we find the trial court did not err when it denied appellant's motion to suppress. We overrule appellant's assignment of error.
 {¶ 43} Judgment affirmed.
Young, P.J., and Powell, J., concur.
[1] {¶ a} Appellant's motion to suppress "specifically" challenged the state's compliance with the following procedures concerning the admission of bodily substance tests:
{¶ b} "The individual administering the Defendant's test of alcohol did not conduct the test in accordance with the time limitation and regulations of the State of Ohio in R.C.4511.19(D) and the Ohio Department of Health governing such testing and/or analysis, as set forth in chapter 3701-53-02 of the Ohio Administrative Code, including the operator's checklist instructions issued by the Ohio Department of Health included in the appendices to OAC 3701-53-02; the law enforcement officer(s) failed to observe the Defendant for 20 minutes prior to conducting the breath test in accordance with OAC 3701-53-02; the sample obtained from Defendant was not analyzed by means of an approved instrument as required by OAC 3701-53-02, or according to the operational checklist for the instrument used as set forth in appendices A to D of OAC 3701-53-02; the machine or instrument analyzing Defendant's alcohol level was not in proper working order and a proper instrument check was not done once every seven days in accordance with the appropriate instrument checklist as set forth in Appendices A-D pursuant to OAC 3701-53-04(A); the instrument check performed pursuant to OAC 3701-53-04(A) was not at or within five one-thousandths (0.005) grams per 210 liters of the target value for that instrument check solution pursuant to OAC 3701-53-04(A)(1); the instrument check solution had been in use for more than three months after its date of first use in violation of OAC 3701-53-04(A)(1); the results of the instrument check were outside the range specified in OAC 3701-53-04(A)(1) but were not confirmed by a senior operator using another bottle of instrument check solution pursuant to OAC 3701-53-04(A)(1); the solution used to calibrate the testing instrument was not kept under refrigeration after first use in accordance with OAC 3701-53-04(C); the solution used to calibrate the testing instrument was used after the manufacturer's expiration date or more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date pursuant to OAC 3701-53-04(A)(1); the State has failed to retain all test results from the instrument in question for a period of not less than three years as required by OAC 3701-53-01(A); the instrument check solution used to conduct the instrument check was not properly approved by the Director of Health pursuant to OAC 3701-53-03(A)(1) and ODHL Method 5810; results of instrument checks which were outside the range specified in OAC 3701-53-04(A)(1) were not preserved, identified and retained pursuant to OAC 3701-53-04(E) and OAC 3401-53-04(A) [sic]; radio frequency interference check was not performed using a hand held radio normally used by law enforcement agency pursuant to OAC 3701-53-04(A)(2); radio frequency interference check detector check was not valid because the evidential breath testing instrument did not detect RFI or did not abort a subject test pursuant to OAC 3701-53-04(A)(2); an instrument check was not performed in accordance with OAC 3701-53-04(A) when the breath testing instrument was put into service or when the instrument was returned to service after maintenance or repairs pursuant to OAC 3701-53-04(B); radio frequency interference check was not properly done pursuant to OAC 3701-53-04(A), OAC 3701-53-04(A)(2), and the appropriate instrument checklist; and the operator was not licensed to operate the instrument analyzing the Defendant's alcohol level nor was he supervised by a senior operator in accordance with OAC 3701-53-07. The person or persons calibrating the instrument analyzing Defendant's alcohol level were not currently licensed to calibrate the instrument in accordance with OAC 3701-53-07.
[2] {¶ a} Appellant specifically cites the following NHTSA instructions for administering HGN test:
{¶ b} "I am going to check your eyes.
{¶ c} "Keep your head still and follow this stimulus with your eyes only.
{¶ d} "Keep focusing on this stimulus until I tell you to stop."
[3] NHTSA procedure states the examiner should "[s]imply move the object to the suspect's left side until the eye has gone as far to the side as possible."
[4] See R.C. 2907.02(D) (providing evidence of past sexual activity between an offender and victim is admissible if the court finds that the evidence is material to a fact at issue and its prejudicial nature does not outweigh its probative value); R.C. 2925.51(A) (providing that laboratory report from the bureau of criminal identification and investigation is prima-facie evidence of the content, identity, and weight of the a controlled substance); and R.C. 2317.47 and R.C. 3111.16 (allowing admission of blood test results into evidence only when exclusionary).