OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Eaton Municipal Court suppressing evidence of field sobriety tests and finding that there was no probable cause to arrest defendant-appellee, Michael Henry, for driving a vehicle while under the influence of alcohol.
 {¶ 2} On October 27, 2007, Ohio State Highway Patrol Trooper Nadi Graham *Page 2 
observed a black sports utility vehicle traveling in excess of the posted speed limit on State Route 725 in the village of Gratis. Trooper Graham began to pursue the vehicle to conduct a traffic stop, and observed as the driver of the vehicle swerved back and forth, committing multiple marked lane violations.
 {¶ 3} The driver stopped the vehicle shortly after Trooper Graham activated his patrol car lights and siren. Trooper Graham approached the vehicle, and observed that appellee was the driver. As Trooper Graham initiated contact with appellee, he detected an odor of alcohol emanating from inside the vehicle. Trooper Graham asked appellee to exit the vehicle, and when he did so, Trooper Graham observed that appellee's eyes were bloodshot and glassy, and that appellee was swaying while standing and walking. Even though appellee had exited the vehicle, Trooper Graham could smell an odor of alcohol emanating from appellee's person. Trooper Graham asked appellee how much he had to drink that night, and appellee stated he had consumed one beer.
 {¶ 4} Trooper Graham asked appellee if he would be willing to take some field sobriety tests, and appellee complied. Trooper Graham then administered the Horizontal Gaze Nystagmus ("HGN"), the One Leg Stand ("OLS"), and the Walk and Turn ("W T") tests. After administering these tests, Trooper Graham arrested appellee.
 {¶ 5} Appellee was charged with driving a vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a). Before his trial, appellee moved to suppress the evidence of his performance on the field sobriety tests. After an evidentiary hearing, the trial court granted appellee's motion, finding that Trooper Graham failed to administer the field sobriety tests in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") standards, and that Trooper Graham did not have sufficient probable cause to arrest appellee. The state appealed the trial court's decision pursuant to Crim. R. 12(K), raising three assignments of error. We discuss the state's assignments of *Page 3 
error out of order.
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "THE TRIAL COURT ERRED BY FINDING THE STANDARD FIELD SOBRIETY TESTS PERFORMED BY [APPELLANT] WERE NOT ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH NHTSA GUIDELINES."
 {¶ 8} In its second assignment of error, the state argues that the trial court erred in finding that Trooper Graham failed to substantially comply with the NHTSA standards in administering the field sobriety tests. The state maintains that substantial compliance with the NHTSA standards does not require a verbatim recitation of the instructions for each test, but instead requires substantial compliance with the standards. The state claims that the record contains clear and convincing evidence that Trooper Graham substantially complied with the NHTSA standards in administering the field sobriety tests.
 {¶ 9} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility.State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Bryson (2001),142 Ohio App.3d 397, 402. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 10} In response to a motion to suppress regarding field sobriety tests, the state must show the requisite level of compliance with accepted testing standards. State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, ¶ 9. The typical standards, as were used in this case, are those from the NHTSA manual. State v. Jimenez, Warren App. No. CA2006-01- *Page 4 
005, 2007-Ohio-1658, ¶ 12. Strict compliance with the NHTSA standards is not necessary, but instead, clear and convincing evidence of substantial compliance with the NHTSA standards is sufficient. R.C. 4511.19(D)(4)(b); see, also, Schmitt at ¶ 9.
 {¶ 11} In filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." See Crim. R. 47. This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v. Shindler,70 Ohio St.3d 54, 1994-Ohio-452, paragraph one of the syllabus. After the defendant meets his burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards. State v. Plunkett, Warren App. No. CA2007-01-012,2008-Ohio-1014, ¶ 11, citing City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 220. However, a defendant may not unjustly cite the state's inability to respond to specific claims for which the state did not have sufficient notice as the basis for granting a motion to suppress.Plunkett at ¶ 21.
 {¶ 12} The extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." State v.Nicholson, Warren App. No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, if the defendant's motion to suppress raises issues in general terms, then the state is only required to show substantial compliance in general terms. Nicholson at ¶ 10; Plunkett at ¶ 12, citingJimenez, 2007-Ohio-1658. The state's burden to show compliance in regards to a general allegation is slight, and requires only the amount of specificity as stated in the motion. Nicholson at ¶ 11. Therefore, the state need only "present general testimony that there was compliance" when the motion is not sufficiently specific. Id. However, if the defendant's motion to suppress lacks the required particularity, the defendant may still *Page 5 
provide some factual basis, either during cross-examination or by conducting formal discovery, to support a claim that the standards were not followed in an effort to "raise the `slight burden'" placed on the state. Plunkett at ¶ 25-26, citing State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 12.
 {¶ 13} This court found a motion to suppress insufficient to raise the state's burden of proof in Plunkett, 2008-Ohio-1014. InPlunkett, we determined that a defendant's motion was insufficient because it contained boilerplate language that merely listed every fathomable defect in the collection of evidence in an OVI case.Plunkett at ¶ 15. Further, the motion was overly broad when it listed the evidence sought to be suppressed, followed by eight vague grounds upon which the motion was based. Id. Even though the motion inPlunkett was insufficient to raise the state's burden, it did provide sufficient notice of a general challenge to the admissibility of the test. See Plunkett at ¶ 18.
 {¶ 14} In this case, appellee's motion to suppress provided even less detail than the motion in Plunkett. In fact, the entire motion consisted of the following:
 {¶ 15} "Now comes Defendant by and through counsel and moves the Court to [s]uppress all evidence obtained through a field sobriety tests [sic] and all evidence obtained thereafter as a result to [sic] Defendant's arrest after the field sobriety test.
 {¶ 16} "The reason for said Motion is that law enforcement officials did not comply with the requirements of 4511.19(4) [sic] in that law enforcement officials did not administer the field sobriety test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the test were [sic] administered, including, but not limited to, any testing standards then in effect that were set by [NHTSA].
 {¶ 17} "Also, the officer did not have probable cause to arrest the Defendant for violation of O.R.C. 4511.19." *Page 6 
 {¶ 18} We find that the lack of specificity in appellee's motion was insufficient to raise the state's burden of proof. SeePlunkett, 2008-Ohio-1014. Therefore, the state was only required to show substantial compliance in general terms. Id. at ¶ 12. Yet despite this lower burden, the trial court conducted an extremely detailed analysis of the evidence in this case in granting appellee's motion. However, our review of the record does not lead us to the same conclusions.
 {¶ 19} With respect to the HGN test, the NHTSA manual states that "a police officer should instruct the suspect that [he is] going to check the suspect's eyes, that the suspect should keep [his] head still and follow the stimulus with [his] eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer is then to check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees." State v. Wood, Clermont App. No. CA2007-12-115,2008-Ohio-5422, ¶ 16.
 {¶ 20} As an initial matter, at the suppression hearing, Trooper Graham testified that he has been trained in the detection and apprehension of OVI drivers, that he has investigated many cases where alcohol impairment was involved, and that he has administered field sobriety tests "hundreds of times" in his seven-year career as a trooper. Trooper Graham explained that in 2000 he was trained to administer field sobriety tests pursuant to the NHTSA standards and that he participated in additional NHTSA training in 2005.
 {¶ 21} Next, Trooper Graham testified as to the instructions he gave appellee before administering the HGN test, and as to the manner in which he administered the test. Trooper *Page 7 
Graham testified that he told appellee to place his hands on his cheeks to steady his head and that he then instructed appellee to keep his eye on the tip of his pen, and follow the tip of the pen with his eyes without moving his head. Trooper Graham stated that he asked appellee if he understood the instructions, and that appellee responded that he understood. Trooper Graham examined appellee's pupils and asked appellee if he was wearing contact lenses. Trooper Graham explained that while holding the pen approximately 8 inches from appellee's face, he checked each eye multiple times for nystagmus at maximum deviation, lack of smooth pursuit, and onset of nystagmus prior to 45 degrees. Trooper Graham testified that it took him approximately two to three seconds to move the stimulus while checking for lack of smooth pursuit. Trooper Graham testified that he observed six of six possible clues while performing the HGN test on appellee.
 {¶ 22} In its decision, the trial court found that "[b]ased on the Trooper's testimony, he did not follow the specific procedures when giving [appellee] the required instructions for the HGN test." Further, the court found that "the Trooper also failed to inform [appellee] to keep following the stimulus with [his] eyes only until he was told to stop." Finally, the court found that the trooper failed to position the stimulus approximately 12-15 inches from appellee's nose while performing the test.
 {¶ 23} While we do not dispute the factual findings made by the trial court, we find that the court erred in concluding that the state failed to prove by clear and convincing evidence that Trooper Graham administered the HGN test in substantial compliance with the NHTSA standards. Although Trooper Graham did not specifically state to appellee, "I am going to check your eyes," the omission of this statement does not render the results of test inadmissible, as the trooper indicated to appellee that he would be checking his eyes by examining his pupils and inquiring as to whether he was wearing contact lenses. Further, Trooper Graham substantially complied with the remaining instructions. See Wood, 2008- *Page 8 
Ohio-5422, ¶ 18. In addition, the HGN test is not rendered inadmissible because Trooper Graham held the pen 8 inches away from appellee's face while performing the test rather than 12-15 inches as the NHTSA standards suggest. State v. Bresson (1990), 51 Ohio St.3d 123. We further find that there is clear and convincing evidence in the record that Trooper Graham substantially complied with the NHTSA standards when administering the HGN test.
 {¶ 24} With respect to the OLS test, an officer is required to "inform suspect that [he] must begin the test with [his] feet together and that [he] must keep [his] arms at [his] side for the entire test. The officer also [must tell] the suspect that he must raise one leg, either leg, six inches from the ground and maintain that position while counting out loud for thirty seconds. * * * NHTSA standards provide that the counting should be done in the following manner: `one thousand and one, one thousand and two, until told to stop.'" Nicholson, 2004-Ohio-6666, ¶ 24.
 {¶ 25} According to Trooper Graham's testimony at the hearing, he instructed appellee to stand toe-to-toe and heel-to-heel, and then lift either foot six inches off the ground and point his toes outward. Trooper Graham continued, stating that he then instructed appellee to count aloud, 1,001, 1,002, 1,003, and so on, while holding his foot six inches above the ground with his toes pointed out. Trooper Graham also explained to appellee not to start the test until told, so that the trooper could make certain that appellee understood the instructions and so the trooper could demonstrate how to perform the test. Trooper Graham testified that while appellee was completing the OLS test, the he observed two of four possible clues.
 {¶ 26} In finding that Trooper Graham failed to conduct the OLS stand in substantial compliance with the NHTSA standards, the trial court conducted an analysis in which the court counted the number of words in the NHTSA standards for performing the OLS test and compared that number with the number of words in Trooper Graham's testimony. The trial court found that of the 114 words in the NHTSA standards, Trooper Graham failed to say 58 *Page 9 
percent of them. Further, the trial court found that Trooper Graham failed to demonstrate the test according to the standards and that the trooper failed to instruct appellee as to when he should begin the test.
 {¶ 27} We are troubled by this aspect of the trial court's decision, as there is no statutory or case law support for conducting such an analysis. This court has previously rejected claims that officers are required to recite, verbatim, the instructions provided in the NHTSA standards. See Nicholson, 2004-Ohio-6666, ¶ 23; Wood, 2008-Ohio-5422, ¶ 20. Such a requirement amounts to strict compliance with the NHTSA standards, which is not necessary; rather, clear and convincing evidence of substantial compliance with the NHTSA standards is sufficient.Wood at ¶ 9, citing R.C. 4511.19(D)(4)(b); Schmitt, 2004-Ohio-37, ¶ 9. Moreover, this court specifically rejected this very argument inWood at ¶ 29.
 {¶ 28} Although the record indicates that Trooper Graham failed to instruct appellee to keep his hands at his sides, we find that appellee was not prejudiced by this omission. See State v. Plemens (Sept. 28, 2001), Huron App. No. H-01-012. It is unfair to hold a suspect's failure to complete an aspect of a field sobriety test against him if the suspect has not been properly instructed as to how to complete the test.State v. Derov, 176 Ohio App. 3d 43, 2008-Ohio-1672, ¶ 23. And while the raising of one's arms higher than six inches is one of the four clues that can be observed in the OLS test, there is no evidence in the record that appellee raised his arms from his sides during the test. Further, Trooper Graham testified that the only clues he noted in appellee's performance on the OLS test were putting his foot down during the test and swaying while he was providing the instructions to appellee. Likewise, appellee was not prejudiced by the trooper's failure to instruct appellee to keep his legs straight during the test, as there is no evidence that appellee failed to keep his legs straight during the test.
 {¶ 29} In addition, the trial court's finding that Trooper Graham failed to demonstrate *Page 10 
the OLS test is both unsupported by the record and contradictory to a previous statement in the court's decision. In the trial court's decision, the court quoted Trooper Graham as testifying that, "I tell them also don't start until I tell them to do so, and made sure he understands it, so I can explain the test and demonstrate the test." Further, the record indicates that the state specifically asked Trooper Graham, "Okay, * * * after explaining the one-legged stand to [appellee], what did you do?" In response to the state's question, Trooper Graham answered, "I then demonstrated the test."
 {¶ 30} Similarly, the trial court's finding that Trooper Graham failed to instruct appellee as to when to begin the test is also unsupported by the record. At the hearing, the state asked the trooper, "Okay, going back to the one-leg stand then. You demonstrated that you instructed the test * * * as you've just testified and you demonstrated the test as you've just testified. * * * [W]hat happened next?" In response, Trooper Graham answered, "I then asked him to take the test, [and] he took the test."
 {¶ 31} After reviewing the record, we find that the trial court erred in finding that the state failed to prove that Trooper Graham administered the OLS test in substantial compliance with the NHTSA standards. The trial court did not apply the substantial compliance standard, and many of its findings are not supported by competent credible evidence. Further, we find that there is clear and convincing evidence in the record that Trooper Graham substantially complied with the NHTSA standards in administering the OLS test.
 {¶ 32} With respect to the W T test, an officer is required to, "first instruct the suspect of the initial positioning, which requires the suspect to stand with [his] arms down at [his] side, and to place one foot directly in front of the other in a line. The suspect is then told to remain in that position while further instructions are given. These further instructions include, the method by which the suspect walks while touching his heel to his toe for every step, counting *Page 11 
the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line. The officer is also told to demonstrate the instructions to ensure that the suspect fully understands." Wood, 2008-Ohio-5422, ¶ 21; see, also,Nicholson, 2004-Ohio-6666, ¶ 26.
 {¶ 33} At the hearing, Trooper Graham testified that he had appellee take a "stance" where appellee kept his left foot planted and put his right foot in front of the left, heel to toe, while keeping his hands down to his sides. Trooper Graham stated that he instructed appellee not to raise his hands unless appellee felt himself starting to fall. Next, Trooper Graham testified that he instructed appellee to take nine steps, heel to toe, while counting out loud and looking at the tip of his toes. Trooper Graham continued, explaining that at the ninth step, appellee was to pivot on his left foot while taking small steps with the right foot, and continue nine more steps back to the starting point, stepping heel to toe, while counting out loud and looking at his toes. Trooper Graham then stated that he demonstrated the test for appellee so that appellee could see how to properly perform the test, except that in the demonstration he only took three steps before pivoting, instead of nine steps. Trooper Graham testified that appellee started the test before he told appellee to do so, and that appellee took only eight steps instead of nine, and that appellee pivoted on his right foot instead of his left foot. Trooper Graham stated that he observed four of eight possible clues while appellee was performing the W T test.
 {¶ 34} In finding that the state failed to prove by clear and convincing evidence that Trooper Graham administered the W T test in substantial compliance with the NHTSA standards, the trial court again conducted a word-counting analysis. The trial court found that Trooper Graham omitted 59 percent of the 160 required words in the instructions for the W T test. Further, the court found that Trooper Graham failed to tell appellee not to stop the test until it was completed, failed to tell appellee when to begin the test, and failed to tell him *Page 12 
to count his first step as "one."
 {¶ 35} Again, we find that the trial court failed to apply the substantial compliance test in reaching its conclusion. While Trooper Graham did not instruct appellee to continue with the test until finished, there is no evidence in the record that appellee actually stopped while performing the test. In fact, when appellee's counsel cross-examined Trooper Graham, he asked the trooper, "apparently [appellee] must not have stopped while walking?" In response, Trooper Graham answered, "Correct." Accordingly, we find this omission was not prejudicial to appellee.
 {¶ 36} In addition, the evidence indicates that Trooper Graham did not have the opportunity to instruct appellee as to when to begin the test, because appellee began the test before the trooper could complete the instructions. While Trooper Graham failed to instruct appellee to count the first step as "one," he did instruct appellee to take nine steps and pivot on the left foot, and appellee took eight steps and pivoted on his right foot.
 {¶ 37} After reviewing the record, we find that the trial court erred in finding that the state failed to prove that Trooper Graham administered the W T test in substantial compliance with the NHTSA standards. The trial court did not apply the substantial compliance standard, and appellee was not prejudiced by the inconsequential omissions in the instructions for the test. Further, we find that there is clear and convincing evidence in the record that Trooper Graham substantially complied with the NHTSA standards in administering the W T test.
 {¶ 38} As the state's burden was merely to show Trooper Graham's substantial compliance with the NHTSA standards in general terms, we find that the state provided more than enough clear and convincing evidence of substantial compliance. The trial court, rather than applying this lower standard, improperly conducted a highly scrutinizing and critical analysis that focused not on Trooper Graham's overall substantial compliance with the *Page 13 
NHTSA standards, but instead on the few instances where the trooper deviated harmlessly from the standards. We find this to be error. Accordingly, the state's second assignment of error is sustained.
 {¶ 39} Assignment of Error No. 3:
 {¶ 40} "THE TRIAL COURT ERRED BY FINDING THAT THERE WAS NO PROBABLE CAUSE FOR ARREST."
 {¶ 41} In its third assignment of error, the state argues that the trial court incorrectly determined that Trooper Graham lacked sufficient probable cause to arrest appellee. The state maintains that given the totality of the circumstances, Trooper Graham had probable cause to arrest appellee.
 {¶ 42} Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol. State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212;State v. Thomas, Warren App. No. CA2004-01-010, 2004-Ohio-4527, ¶ 15. The trial court makes this determination based on the totality of the surrounding circumstances. Id.
 {¶ 43} In its decision, the trial court found, without considering appellee's performance on the field sobriety tests, that the state failed to prove that Trooper Graham had probable cause to arrest appellee. In support of this conclusion, the trial court reasoned that Trooper Graham testified that he arrested appellee based on his performance on the field sobriety tests. Since the trial court had previously found that the state failed to prove Trooper Graham's substantial compliance with the NHTSA standards, the remaining facts and circumstances surrounding the arrest are not factored into the trial court's analysis.
 {¶ 44} According to the record, Trooper Graham first observed appellee driving his vehicle in excess of the speed limit. While pursing appellee, Trooper Graham observed *Page 14 
appellee drive the vehicle back and forth across the roadway, committing several marked lane violations. Trooper Graham noted an odor of alcohol emanating from inside the vehicle, and later noted that the odor emanated from appellee's person after appellee exited his vehicle. Trooper Graham testified that appellee had bloodshot, glassy eyes and swayed when he walked and even when he stood still. Trooper Graham also stated that appellee admitted to consuming one beer.
 {¶ 45} Under the totality of the circumstances, even if evidence of appellee's performance on the field sobriety tests was properly suppressed, we find that Trooper Graham had sufficient information to believe that appellee was driving his vehicle while under the influence of alcohol. We find the trial court erred in failing to consider the totality of the circumstances surrounding appellee's arrest. Moreover, we find that based on the totality of the circumstances, Trooper Graham had sufficient probable cause to arrest appellee for OVI. Accordingly, the state's third assignment of error is sustained.
 {¶ 46} Assignment of Error No. 1:
 {¶ 47} THE TRIAL COURT ERRED BY DENYING STATE'S MOTION TO STRIKE DEFENDANT'S MOTION TO SUPPRESS.
 {¶ 48} As a result of our resolution of the state's second and third assignments of error, the first assignment of error is moot.
 {¶ 49} Having sustained the state's second and third assignments of error, and having found moot the remaining assignment of error, we reverse the judgment of the trial court and remand this matter for further proceedings according to law and consistent with this opinion.
 {¶ 50} Judgment reversed in part and remanded.
 YOUNG and POWELL, JJ., concur. *Page 1