[Cite as *State v. Deluca*, 2017-Ohio-1235.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                     :

     Plaintiff-Appellee,                        :

     - vs -                                          :

DAVID DELUCA,                                  :

     Defendant-Appellant.                   :

CASE NO. CA2016-03-055

O P I N I O N
4/3/2017


APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 15TRC04251-B


Neal D. Schuett, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Meadows Law Firm, Jeffrey C. Meadows, 5900 West Chester Road, Suite E, West Chester, Ohio 45069, for defendant-appellant


**S. POWELL, J.**

{¶ 1} Defendant-appellant, David Deluca, appeals from his conviction in the Hamilton Municipal Court after a jury found him guilty of operating a vehicle while under the influence of alcohol. For the reasons outlined below, we affirm.

{¶ 2} During the early morning hours of July 19, 2015, Butler County Sheriff's Deputy Jasen Hatfield issued a citation to Deluca for operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor. It is undisputed

that prior to issuing this citation, Deputy Hatfield administered three field sobriety tests to Deluca; specifically, (1) the horizontal gaze nystagmus ("HGN") test; (2) the walk-and-turn test; and, (3) the one-leg-stand test. Deluca registered clues indicating his impairment on each of these tests, thus prompting Deputy Hatfield to issue the aforementioned citation.

{¶ 3} On October 12, 2015, Deluca filed a motion to suppress alleging, among other things, that Deputy Hatfield had not administered the three field sobriety tests in compliance with the testing standards set forth by the National Highway Traffic Safety Administration ("NHTSA"). Following a hearing on the matter, the trial court granted Deluca's motion to suppress as it related to the HGN test, but denied Deluca's motion as it related to the walk-and-turn test and the one-leg-stand test. In so holding, the trial court stated:

> The testimony concerning the HGN which is the Horizontal Gaze Nystagmus, that testimony did not establish that it was conducted in substantial compliance with NHTSA standards and the HGN testing not being admissible in the trial of this matter. On the Walk and Turn test and the One Leg Stand test, the court finds it that those were conducted with in substantial compliance with NHTSA standards and those would be admissible at the trial of this matter.

{¶ 4} A two-day jury trial was then conducted on February 22 and 23, 2016. After both parties rested, the jury returned a verdict finding Deluca guilty of operating a vehicle while under the influence of alcohol. The trial court then sentenced Deluca to 180 days in jail, with 177 of those days suspended, and ordered Deluca to pay $1,039.70 in fines and court costs. The trial court also suspended Deluca's driver's license for a period of one year.

{¶ 5} Deluca now appeals from his conviction, raising two assignments of error for review. For ease of discussion, Deluca's two assignments of error will be addressed out of order.

{¶ 6} Assignment of Error No. 2:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN

FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS IN ITS ENTIRETY.

{¶ 8} In his second assignment of error, Deluca argues the trial court erred by denying his motion to suppress evidence as it relates to his performance of two field sobriety tests; namely, the walk-and-turn test and the one-leg stand test. We disagree.

**Standard of Review**

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10. "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 12, quoting *Burnside*.

**Burden of Proof Establishing Substantial Compliance**

{¶ 10} The typical standards applicable to field sobriety tests are those from the NHTSA manual. *State v. Jimenez*, 12th Dist. Warren No. CA2006-01-005, 2007-Ohio-1658, ¶ 12. In order for field sobriety testing evidence to be admissible, the state is not required to show the officer acted in strict compliance with NHTSA testing standards. *State v. Partin*, 12th Dist. Warren No. CA2010-04-040, 2011-Ohio-794, ¶ 13. Rather, the state is only required to demonstrate that the officer substantially complied with NHTSA testing standards.

*State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 11. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Nos. CA2008-10-118 and CA2008-10-119, 2009-Ohio-3538, ¶ 26.

{¶ 11} The extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." *State v. Nicholson*, 12th Dist. Warren No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. In this case, Deluca filed a general, boilerplate motion to suppress and supporting memorandum. Neither of these documents, which spanned a total of four pages, alleged any specific facts to support Deluca's claim that Deputy Hatfield did not substantially comply with the NHTSA testing standards. Therefore, because Deluca's motion to suppress challenged the legality of Deputy Hatfield's administration of the field sobriety tests in general terms, the state's burden of proof was slight, thereby only requiring it to present general testimony that Deputy Hatfield substantially complied with the NHTSA testing standards. *State v. Henry*, 12th Dist. Preble No. CA2008-05-008, 2009-Ohio-10, ¶ 12.

**Walk-and-Turn Test**

{¶ 12} Regarding the walk-and-turn test, the NHTSA manual instructs the officer to direct the subject to stand heel-to-toe, keep his hands at his side, and listen to instructions for how to perform the test. Once the instruction phase is complete, the subject is to comply with the instructions given for performing the test by taking nine heel-to-toe steps in a straight line (real or imaginary) in one direction, turn, and then take nine heel-to-toe steps back down that same line to the starting point. The NHTSA manual lists eight clues the officer should look for as the subject completes the test. These clues are whether the subject: (1) cannot keep his balance while listening to the instructions; (2) starts to perform the test before the instructions are finished; (3) stops while walking; (4) does not touch heel-to-toe; (5) steps off

the line; (6) uses his arms for balance; (7) conducts an improper turn; and, (8) completes an incorrect number of steps. According to the NHTSA manual, the observation of two or more clues suggests impairment.

{¶ 13} As it relates to the walk-and-turn test, Deputy Hatfield testified that he had Deluca stand heel-to-toe with his arms by his side while he instructed and then demonstrated the walk-and-turn test. As Deputy Hatfield testified, while using an imaginary line, "I took nine steps down and nine steps back heel-to-toe." After demonstrating the test, including how to complete a proper turn, Deputy Hatfield testified he asked Deluca if he had any leg problems that would hinder his ability to complete the test, or anything else that may impact his performance of the test, both questions Deluca answered in the negative. Deputy Hatfield then testified he asked Deluca if he understood the instructions on how to complete the walk-and-turn test, to which Deluca responded that he did. When asked how Deluca faired in performing this test, Deputy Hatfield testified Deluca exhibited five of the eight clues; namely, (1) not being able to keep his balance while listening to instructions; (2) taking multiple steps off the line; (3) not touching heel-to-toe; (4) using his arms for balance; and, (5) conducting an improper turn.

**One-Leg-Stand Test**

{¶ 14} Regarding the one-leg-stand test, the NHTSA manual states that the officer should instruct the subject to listen to instructions on how to perform the test while keeping his feet together and arms at his side. The subject should then be instructed to raise one leg (either leg) with the foot approximately six inches off the ground, keeping his legs straight and arms at his side and count "one thousand one, one thousand two, one thousand three, and so on until told to stop." The officer is instructed to time the test and to terminate it after 30 seconds. The NHTSA manual lists four clues that the officer should look for as the subject completes this test. These clues are whether the subject: (1) swayed while balancing; (2)

used his arms for balance; (3) hopped; or, (4) put his foot down. According to the NHTSA manual, the observation of two or more clues suggests impairment.

{¶ 15} As it relates to the one-leg-stand test, Deputy Hatfield testified he instructed Deluca that this test required him to stand and raise either leg six to eight inches of the ground "pointing forward looking at his feet." Deputy Hatfield testified he then instructed Deluca to count to 30 "using the method 1001, 1002, 1003. I instructed him to get to thirty or until I tell him to stop." Deputy Hatfield then testified he demonstrated the one-leg-stand test for Deluca and asked Deluca if he understood the instructions on how to complete the test. In response, just as with the walk-and-turn test, Deputy Hatfield testified Deluca informed him that he understood the instructions on how to complete the one-leg-stand test and that he was capable of completing the test. When asked how Deluca faired in performing this test, Deputy Hatfield testified he stopped the test after he became concerned for Deluca's safety when Deluca could not maintain his balance after putting his foot down four or five times.

**The State Met Its Slight Burden of Proof**

{¶ 16} After a thorough review of the record, we find the state met its slight burden of proof establishing Deputy Hatfield substantially complied with the NHTSA testing standards for both the walk-and-turn and the one-leg-stand test. As the record reveals, although the state's burden was slight given Deluca's general, boilerplate motion to suppress and supporting memorandum, Deputy Hatfield provided extensive testimony detailing the specific instructions he provided to Deluca on how to perform both tests. Deputy Hatfield also testified that he then demonstrated both tests for Deluca before asking Deluca if he understood how to complete the tests. On both occasions, Deluca stated he understood how to complete the tests and that he was capable of completing the tests. Therefore, because the state met its slight burden of proof establishing Deputy Hatfield substantially complied with the NHTSA testing standards for both the walk-and-turn and the one-leg-stand test, we

find no error in the trial court's decision denying Deluca's motion to suppress as it relates to these two tests.

{¶ 17} Despite this, Deluca initially claims the trial court erred in denying his motion to suppress because Deputy Hatfield's testimony lacked credibility in that it was "inconsistent and flawed" and referenced additional facts not included in his police report. However, the trial court considered the evidence presented at the suppression hearing and found Deputy Hatfield's testimony was credible. As stated previously, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Vaughn*, 2015-Ohio-828 at ¶ 8. In turn, the trial court was free to believe all, part, or none of Deputy Hatfield's testimony. *State v. Coleman*, 12th Dist. Fayette No. CA2011-09-020, 2012-Ohio-3630, ¶ 19. "[W]e defer to the credibility determinations made by the trial court at a suppression hearing." *State v. Klump*, 12th Dist. Brown No. CA2000-01-001, 2000 WL 744981, *2 (June 12, 2000). Deluca's argument otherwise is without merit.

{¶ 18} Deluca also argues the trial court erred in denying his motion to suppress since Deputy Hatfield could not recall exactly how high Deluca raised his arms to regain his balance during both tests. Deluca finds this significant since the NHTSA manual states that using one's arms for balance amounts to a clue only if the subject raises one or both arms more than six inches from his or her side to maintain balance. However, while Deputy Hatfield could not specifically state how high Deluca raised his arms, Deputy Hatfield, a 12-year veteran with the Butler County Sheriff's Office trained on how to conduct field sobriety tests in compliance with the NHTSA testing standards, still noted this as a clue indicating Deluca was impaired. As Deputy Hatfield stated, "his arms would come out and just kind of steady himself." Deputy Hatfield also testified when asked if he recalled how far Deluca's arms were raised, "[t]hey weren't at his side * * * [a]s I instructed when I demonstrated the test." This comports with the state's slight burden of proof establishing Deputy Hatfield

substantially complied with the NHTSA testing standards. Deluca's argument to the contrary is without merit.

{¶ 19} Deluca next argues the trial court erred in denying his motion to suppress since Deputy Hatfield did not explain "what each test was meant to assess prior to his performance of the tests." According to Deluca, this failure shows that he did not fully understand the requirements of the tests prior to commencing his performance of these tests. However, nowhere within the NHTSA manual is it required that the subject be expressly told what each test is meant to assess. Moreover, as noted above, the record indicates Deputy Hatfield provided Deluca with specific instructions detailing how he was to perform both the walk-and-turn test and the one-leg-stand test. Deputy Hatfield then demonstrated the tests to Deluca before asking him if he understood how to complete both tests. On both occasions, Deluca stated that he understood how to complete the tests and that he was capable of completing the tests. Again, this comports with the state's slight burden of proof establishing Deputy Hatfield substantially complied with the NHTSA testing standards. Deluca's argument is therefore without merit.

{¶ 20} Finally, as it relates to the one-leg-stand test, Deluca argues the trial court erred in denying his motion to suppress since Deputy Hatfield stopped the test after Deluca put his foot down four or five times instead of allowing the test to continue for the full 30 seconds. However, while it may be true that Deputy Hatfield stopped the test before the full 30 seconds had expired, Deputy Hatfield testified he stopped the test after he became concerned for Deluca's safety when Deluca could not maintain his balance. The NHTSA testing standards for the one-leg-stand test specifically state that the subject's safety should be considered at all times and that the test should be terminated when the subject cannot complete the test due to concerns for the subject's safety. This once again comports with the state's slight burden of proof establishing Deputy Hatfield substantially complied with the

NHTSA testing standards. Deluca's final argument is therefore likewise without merit.

{¶ 21} In light of the foregoing, because the state met its slight burden of proof establishing Deputy Hatfield substantially complied with the NHTSA testing standards for both the walk-and-turn and the one-leg-stand test, we find no error in the trial court's decision denying Deluca's motion to suppress as it relates to both of these tests. Therefore, Deluca's second assignment of error is without merit and overruled.

{¶ 22} Assignment of Error No. 1:

{¶ 23} APPELLANT'S CONVICTION FOR OVI WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} In his first assignment of error, Deluca argues his conviction for operating a vehicle under the influence of alcohol was against the manifest weight of the evidence. However, while Deluca did provide this court with a transcript of the hearing on his motion to suppress, Deluca did not provide this court with a transcript of the jury trial. As this court has repeatedly stated, "[t]he duty to provide a transcript for appellate review falls upon the appealing party since he or she bears the burden of showing error by reference to matters in the record." *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 18. As a result, "[w]here portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Therefore, without a transcript of the jury trial, this court must presume that Deluca's conviction for operating a vehicle while under the influence of alcohol was not against the manifest weight of the evidence. *State v. Thomas*, 9th Dist. Summit No. 25244, 2011-Ohio-912, ¶ 8; *State v. Ochoa*, 5th Dist. Muskingum No. CT2010-0023, 2010-Ohio-5860, ¶ 25. Accordingly, Deluca's first assignment of error is without merit and overruled.

{¶ **25**} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.